IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| First Mercury Insurance Company )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>) CIVIL ACTION NO.<br>Petroleum South Transportation, LLC; )<br>Connie Rhenee Webb; Rickey Junior )<br>Thomas; Danny Michael Corkren )<br>)<br>Defendants. ) | |

## PETITION FOR DECLARATORY JUDGMENT

COMES NOW First Mercury Insurance Company ("First Mercury"), by and through its undersigned counsel, and files this Petition for Declaratory Judgment and alleges as follows:

1. This is an action for declaratory relief pursuant to 28 U.S.C. §§ 2201-2202, brought to determine the rights, duties, status, and legal relations of the parties under the insurance policy described below.

2. An actual and justiciable controversy exists among the parties as to which a declaratory judgment setting forth the parties' respective rights and obligations under the said insurance policy is necessary and appropriate.

3. Plaintiff First Mercury is an excess and surplus lines insurance company eligible to do business in the state of Alabama with its principal place of business in the state of Michigan and is a resident and citizen, for jurisdictional and venue purposes, of the state of Illinois.

4. Upon information and belief, Defendant Petroleum South Transportation, LLC (hereinafter "Petroleum South") is a corporation organized and existing under the laws of the State

of Alabama with its principal place of business in Huntsville, Alabama.

5. Upon information and belief, Defendant Danny M. Corkren ("Corkren") is over the age of nineteen (19) and is a resident and citizen of the State of Alabama.

6. Upon information and belief, Defendant Connie Rhenee Webb ("Webb"), is over the age of nineteen (19), and is a resident and citizen of the State of Alabama.

7. Upon information and belief, Defendant Rickey Junior Thomas ("Thomas"), is over the age of nineteen (19), and is a resident and citizen of the State of Alabama.

8. This Court has original jurisdiction over this civil action under 28 U.S.C. § 1332(a) because the controversy is between citizens of different states and, thus, there is complete diversity of citizenship. The amount in controversy exceeds $75,000, exclusive of interest and costs.

9. Venue in this District is proper, pursuant to 28 U.S.C. § 1391(a)(2), as a substantial part of the events, acts, or omissions giving rise to the asserted claims took place in this District.

10. In this action, First Mercury seeks a declaration of the parties' rights and liabilities, pursuant to a policy of insurance issued by First Mercury to Petroleum South with respect to coverage for the lawsuit styled <u>Connie Rhenee Webb, et al v. Petroleum South Transportation, et al.</u> Circuit Court of Walker County, Alabama, Civil Action No. 2011-900385 ("the automobile suit").

11. The Complaint filed against Petroleum South in the automobile suit alleges that a vehicular accident occurred on July 17, 2011, which caused Defendants Webb and Thomas to sustain allegedly serious injuries. The Complaint makes claim against Petroleum South and Corkren for the injuries, and seeks compensatory and punitive damages. Not until November 8, 2012 did First Mercury receive notice of the July 17, 2011 accident, or injuries, or of the suit filed on November 1, 2011 by Webb and Thomas, or of any claim made against Petroleum South or Corkren.

12. On November 1, 2011, Webb and Thomas, filed their personal injury complaint in the

2

Circuit Court of Walker County, Alabama Civil Action No. 2011-900385.00 against Petroleum South and Corkren, making claim for the alleged accidental injuries of Webb and Thomas. Not until November 8, 2012 did First Mercury receive notice of the November 1, 2011 suit. At that point the case had already been set for trial on December 17, 2012 by an Order dated October 9, 2012.

13. On July 20, 2012, attorneys Stephen Fitts, III, Andrew Sinor, Jr., and Andrew Knowlton entered an appearance as counsel on behalf of Petroleum South and Corkren in the automobile suit. Upon information and belief, these attorneys were retained by Petroleum South's insurer, Zurich North America ("Zurich"). Not until November 8, 2012 did First Mercury receive notice of the defense provided to Petroleum South and Corkren by Zurich. Not until November 8, 2012 did First Mercury receive notice that these attorneys were serving as defense counsel for Petroleum South and Corkren in said automobile suit.

14. On information and belief, pleadings, discovery and depositions in the automobile suit were ongoing before First Mercury received notice on November 8, 2012. As of the date of filing this action, First Mercury has not been given notice of the defense actions and discovery ongoing in the case. Up through and including the date of this Petition, First Mercury has not been allowed or provided full access to the discovery and defense provided to Petroleum South and Corkren. First Mercury was not consulted with respect to any defense decisions or defense strategy. First Mercury was not consulted with respect to the discovery and prosecution of the case by the attorneys representing the plaintiffs, Webb and Thomas, in the automobile case. Up through the date of this Petition, First Mercury was not allowed access to defense counsel reports or other information showing the conduct, settlement negotiations, settlement recommendations, discovery or defense strategy of the attorneys representing Petroleum South in the automobile suit. First Mercury has not been afforded an adequate opportunity to evaluate the liability and exposure presented to Petroleum

3

South and Corkren or to participate in defense decisions during the time the automobile suit has been in progress.

15.     On information and belief, prior to First Mercury's receipt of notice of the automobile suit, plaintiff's counsel in the automobile suit made demand on Petroleum South and its insurer, Zurich, for settlement in an amount exceeding Zurich's policy limits. No notice was given to First Mercury prior to November 8, 2012 of any settlement discussions between Petroleum South and Webb and Thomas. No notice was given to First Mercury of any settlement demands or offers. First Mercury was not allowed or provided the opportunity required by its policy to participate in defense strategy, decisions or negotiations concerning settlement. Counsel for Webb and Thomas, in advance of the December 17, 2012 trial date, is now demanding $2.5 million to settle the automobile suit. (See correspondence attached as Exhibit "A").

16.     First Mercury's insurance policy issued to Petroleum South was in force for the policy period from February 27, 2011 to February 27, 2012 The policy number is EXGA000303.

17.     Not until November 8, 2012 did First Mercury receive notice of the July 17, 2011 accident or of the November 1, 2011 suit filed against Petroleum South and Corkren. Notice was first given to First Mercury of the accident, the date, the alleged injuries, and the suit through a letter dated November 6, 2012 and received on November 8, 2012, from an attorney on behalf of Petroleum South. By November 8, 2012, when the actual notice was received by First Mercury, written discovery had been completed in the case, court orders had been entered in the case, depositions had been taken, at least one settlement demand in excess of Zurich's policy limits had been made, strategic defense decisions had been made, and the case was set for trial in less than 36 days. This was First Mercury's first notice of the July 17, 2011 accident, of the claims against Petroleum South and Corkren or of the November 1, 2011 automobile suit against Petroleum South

and Corkren.

    18.    The First Mercury policy issued to Petroleum South provides:

> **3.    Duties In The Event Of an Event, Claim or Suit**
>
>     a.    You [Petroleum South] must see to it that we [First Mercury] are notified as soon as practicable of an "event", regardless of the amount, which may result in a claim under this insurance. To the extent possible, notice should include:
>
>         (1) How, when and where the "event" took place;
>         (2) The names and addresses of any injured persons and witnesses; and
>         (3) The nature and location of any "injury or damage" arising out of the "event".
>
>     b.    If a claim is made or suit is brought against any insured you must:
>
>         (1) Immediately record the specifics of the claim or suit and the date received; and
>         (2) notify us [First Mercury] as soon as practicable.
>
>     You [Petroleum South] must see to it that we receive written notice of the claim or suit as soon as practicable.
>
>     c.    You [Petroleum South] and any other insured involved must:
>
>         (1) Immediately send us [First Mercury] copies of any demands, notices, summonses or legal papers received in connection with the claim or suit;
>         (2) authorize us [First Mercury] to obtain records and other information;
>         (3) Cooperate with us [First Mercury] in the investigation or settlement of the claim or defense against the suit; and
>         (4) Assist us [First Mercury], upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of "injury or damage" to which this insurance

        may also apply.

    d.    No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

19.    Petroleum South failed to comply with the conditions of the policy. Petroleum South failed to provide timely notice of the accident, claim, or suit. Petroleum South failed to cooperate.

20.    First Mercury's policy further provides:

> When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other suit seeking damages for "injury or damage."

21.    First Mercury was not allowed the opportunity to participate in the defense of the automobile case.

22.    First Mercury avers that it does not owe coverage to Petroleum South and Corkren under the policy in question for the claims set out in the automobile suit; further that the facts and circumstances alleged in the aforesaid automobile suit are not within the terms of the policy; or that there was no event within the policy period; that no covered damages were sustained by Webb or Thomas during the policy period; or that said allegations in the aforesaid automobile suit are within the terms of the exclusions of the policy; or that the conditions of the policy have not been met. Further, the policy requires Petroleum South to provide First Mercury timely notice of accidents, claims, suits, and timely notice of legal proceedings, including contemporaneous notice of ongoing defense efforts and ongoing prosecution by opposing parties.

23.    Petroleum South waited more than a year and a half to provide notice of the accident and injuries, and more than one year to provide notice of the suit and defense. First Mercury has been materially prejudiced by this unreasonably long delay, particularly in light of the December 17,

2012 trial date. First Mercury has been prevented from exercising its contractual rights under its policy to participate in the defense and protect its interests, despite the serious nature of the alleged injuries in the automobile suit and settlement demands in excess of Zurich's policy limits. For these reasons, no policy benefits are provided for any defendant to this action, and no policy benefits are due to Petroleum South or Corkren by way of defense or indemnity of the aforesaid suit under the policy by First Mercury.

24.     A bona fide controversy exists between the parties as to their legal rights, status, and liabilities pursuant to said policies.

**WHEREFORE, PREMISES CONSIDERED**, First Mercury respectfully requests the following relief:

(1)     That this Court will take jurisdiction of this Petition;

(2)     That this Court will ORDER, ADJUDGE, and DECREE that this is a proper case for declaratory judgment relief and that there is a bona fide controversy between the parties as to their legal rights, status, and liabilities;

(3)     That the process of this Court be issued to the defendants as provided by law and the rules of this Court and that the defendants be ordered to respond to this Petition for Declaratory Judgment within the time prescribed by law or, in the event of failure to do so, suffer a decree *pro confesso*;

(4)     That upon final hearing of this cause, this Honorable Court will declare the rights, status, and legal relations of First Mercury and the defendants named in this Petition under said policy of insurance issued by First Mercury; and

(5)     That upon a final hearing of this case, this Honorable Court will order, adjudge, declare, or decree that no coverage is afforded to the defendants under said policy for the claims
7

brought by the aforesaid parties.

Dated this 7th day of December, 2012.

Respectfully submitted,

/s/ Carol Ann Smith
Carol Ann Smith, ASB-3485-T81C

/s/ David R. Pace
David R. Pace, ASB-0107-A26D
Attorneys for Plaintiff,
First Mercury Insurance Company

**OF COUNSEL:**
SMITH & PACE, P.C.
2000A SouthBridge Parkway
Suite 405
Birmingham, Alabama 35209
Phone: (205) 802-2214
Fax: (205) 879-4445

## PLEASE SERVE THE FOLLOWING DEFENDANTS BY CERTIFIED MAIL:

Petroleum South Transportation
605 Oakwood Avenue
Huntsville, AL 35811

Connie Rhenee Webb
1665 Number Two Hill Road
Nauvoo, AL 35578

Rickey Junior Thomas
1665 Number Two Hill Road
Nauvoo, AL 35578

Danny Michael Corkren
351 Dewey Burleson Lane
Brilliant, AL 35548

# EXHIBIT A



# NELSON BRYAN & JONES

December 6, 2012

Stephen Fitts
Hand Aredall, LLC
2001 Park Place, Suite 1200
Birmingham, AL 35203-2731

Jim Brakefield
Jackson, Fikes, Hood & Brakefield
P.O. Box 748
Jasper, AL 35502

    Re:    <u>Connie R. Webb, et al v. Petroleum South Transportation, et al</u>

Dear Counsel:

    In September 2011, Zurich was on notice of the accident involving Connie Webb and Rickey Thomas. On September 16, 2011, Zurich <u>denied</u> Rickey Thomas's claim.

    Over the course of the next year, Plaintiffs provided constant treatment updates, medical records, witness statements and other evidence. Although I sent thousands of pages of documents to Zurich Insurance, I do not believe I received a <u>single response</u> to any of my e-mails or letters. I would send a letter enclosing medical records and never receive a response. I have not received a single offer on this case. We are set for trial in 10 days. The last and only communication I received from Zurich was a denial of Rickey Thomas's claim and a request for information on Connie Webb.

    Every single eyewitness has been deposed. Almost every doctor has been deposed. On each and every attempt I have made to limit the cost of litigation and the extent of litigation, we have been blocked and met with firm resistance. Attempts to authenticate medical records by agreement have for the most part failed. Attempts to stipulate to the reasonableness of charges have failed. One such example of defiance by the Defendants is Plaintiffs' attempt to come to agreement that the charges for the initial ER visits for my clients <u>on the day of the accident</u> were reasonable and necessary. I have never had a case where defense counsel refused to admit, at the very least, that the charges stemming from an initial emergency room visit following an accident were not reasonable and necessary. It is clear from these actions that Defendants have <u>zero</u> desire to resolve this case.

On October 17, 2012, I sent the attached letter to defense counsel with an offer to settle. At that point, Defendants had ample evidence of liability in this case. The Trooper report and statements of witnesses prove egregious conduct on the part of the Defendant. I had provided most, if not all, treatment records for my clients. One example of the clearness of the medical claims are the records from Walker Baptist and Dr. Prevost for Connie Webb's cervical fusion. Even prior to the taking of the Dr. Prevost's deposition, it was absolutely clear that Connie Webb's injuries and cervical fusion were caused by the accident. It is clear from his history and notes that Defendants had no reason to believe that would not be the case in deposition.

The letter of October 17 informed Defendants that the offer would be withdrawn in 10 days and also asserted my position on a verdict range. We did not receive a single response to that letter. We did not get a call, e-mail or letter in response. The Defendants chose to not even send a letter exhibiting a desire to talk about resolving this case pending some specific information needed through informal or formal discovery. Instead the letter was met with <u>no response period</u>. Additionally, the letter was met with ramped up litigation. It is clear to me that Defendants and its insurance company have <u>no desire to settle this case</u>.

About two weeks ago, I was contacted by a national mediation coordination service. The individual informed me that <u>defense counsel had submitted this case to mediation</u>. That was news to me. I had never been asked by the defense counsel if I was interested in mediation. I had never been contacted by Zurich to determine whether I was amenable to mediation. Plaintiffs had never been offered anything to settle this case. There had never been any settlement discussions prior to this "cold call" from a mediation coordinator from another state. To say the least, that is offensive. If the Defendants had wanted to mediate this case at any time prior to that point, a call would have been the responsible and appropriate mechanism for setting this mediation. Plaintiffs informed Defendants they would mediate if a substantial offer was made prior to mediation and if the excess insurance carrier's adjuster would be at mediation. There was no response and no offer made.

Defendant filed a Motion to Continue the trial and a Motion to Require Mediation on November 30. This was less than 3 weeks from trial. The Motion to Continue was denied. The Motion to Mediate was granted. Alabama law <u>requires</u> judges to order a case to mediation if requested by either of the parties. Despite Plaintiffs acquiescence to the Motion to Mediate because of Alabama law, Defendants <u>did not schedule a mediation until December 13</u>. **That is less than 96 hours before the trial.**

On December 13, this case will be fully prepared for trial. Plaintiffs will ask the Court to award over $1,000,000.00 in compensatory damages in this matter. Plaintiffs are going to ask the Court to award a significant multiplier of punitive damages due to the absolutely inexcusable conduct of Danny Corkron. Plaintiffs

expect to be able to fully prove all facts proffered by them in this litigation. If the facts are proven at trial, Plaintiff fully expects to receive a verdict in excess of $4,000,000.00. If the independent eyewitnesses prove to be as credible at trial as they have in deposition, the Plaintiffs expect that the verdict range could increase greatly. A verdict above policy limits is possible at trial and will be affirmable on appeal.

If Defendants believe that compensatory damages will be reduced on appeal by the Supreme Court, they are mistaken. The Supreme Court of Alabama will not disturb a compensatory damage award for Plaintiffs who have been damaged as greatly as Connie Webb and Rickey Thomas. A compensatory award that includes past medical expenses, future medical expenses, past pain and suffering, future pain and suffering, and permanent scaring and disfigurement to my clients will not be disturbed. If Defendants are banking on the fact that the Court will cut the punitive award, then we will have to see. When a fuel truck is going over the speed limit and passing a vehicle on the right in a lane that has ended, the facts will support a large punitive award. When you couple that fact with Lee Butler's testimony that the truck had passed him on the right only a few moments before while traveling <u>in excess of 70 miles per hour</u>, this case is ripe for a large punitive award.

The last offer that will be made on this case is today. We will settle this matter for $2,500,000.00 if offered on or before noon on Friday, December 7. At that point, that offer will be withdrawn and this weekend will be spent preparing for trial.

Please supply a copy of this letter to Mr. Corkren, Petroleum South Transportation, and owner Mike Aziz. Please let them know that the Plaintiffs have made an offer within the policy limits of their insurance coverage. When a verdict is obtained and if it is greater than the available insurance coverage, Plaintiffs will seek contribution from Danny Corkren and Petroleum South Transportation Corporation in all manners available to them under the law.

                Sincerely,

                Robert O. Bryan



# NELSON BRYAN & JONES

October 17, 2012

Andrew J. Sinor
Stephen N. Fitts
Hand Arendall, LLC
2001 Park Place North, Suite 1200
Birmingham, AL 35203

Dear Drew and Stephen:

I made an offer on July 13, 2012 to settle Connie Webb's case for $895,000.00. I have not previously made an offer to settle Rickey Thomas' case. Because this case is set for trial in December, we need to quickly determine if we are going to settle this case or move forward for trial.

A bench trial puts me in a stronger position than I previously suspected when I made the offer on Connie Webb's case in June. Further her medical condition has become clearer to me since that time. The offer I made in July was too low, but I am willing to leave that offer on the table until Friday, October 26. I will also offer to settle Rickey Thomas' case for $495,000.00. Again, that offer will remain open until Friday, October 26.

Please understand that Plaintiff will be ready for trial on December 17.

Please provide this letter to your clients, Petroleum South Transport and Danny Corkren. Please let Petroleum South and Danny Corkren know that at the expiration of 10 days, we will withdraw these offers and prepare for trial. I do not know how much insurance coverage is available, but I hope you will make them aware of the fact that if a verdict is received above the amount of coverage available, we will have no choice but to look to them for any amounts over the coverage. I am sure you have explained this to them, but I would hope that you would provide this letter to them so that they can understand the seriousness of our position.

Connie and Rickey were seriously injured in this wreck. Connie had a cervical fusion and elbow surgery. Rickey has had epidural steroid injections and will continue to have those for the rest of his life. Even though Connie's medical bills are higher than Rickey's at this time, I suspect over his lifetime, his will surpass hers.

The conduct of Mr. Corkren was willful and wanton. He was over the speed limit passing my clients in a merging lane that had almost ended. His conduct on the

scene was reprehensible. I believe we will receive a compensatory damage award, and also punitive damages. I believe the compensatory award will probably be greater than the amounts offered above. If punitive damages are awarded in the same amounts, then your client will be facing a judgment approaching $3,000,000.00. If the Judge chose to award three times the compensatory awards in punitive damages, then the verdict will exceed $5,000,000.00.

The settlement demands are fair and reasonable considering my clients' injuries. They will have to be withdrawn next Friday if not accepted.

Sincerely,

Robert O. Bryan